# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:   October 23, 2014**

**NO. 33,997**

**STATE OF NEW MEXICO,**

  Plaintiff-Respondent,

v.

**ANTONIO T., a child,**

  Defendant-Petitioner,

**Consolidated with:**

**NO. 33,999**

**STATE OF NEW MEXICO,**

  Plaintiff-Petitioner,

v.

**ANTONIO T., a child,**

  Defendant-Respondent.

**ORIGINAL PROCEEDINGS ON CERTIORARI**
**Sandra A. Price, District Judge**

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Petitioner and Respondent Antonio T.


Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Respondent and Petitioner State of New Mexico

**OPINION**

**CHÁVEZ, Justice.**

{1}     Antonio T., a seventeen-year-old high school student, was taken to Assistant Principal Vanessa Sarna's (Ms. Sarna) office because he was suspected of being under the influence of alcohol. Possession of alcohol by a minor is a delinquent act under NMSA 1978, Section 32A-2-3(A)(2) (2009) of the Children's Code. Ms. Sarna questioned Antonio about his possession of alcohol in the presence of Deputy Sheriff Emerson Charley, Jr. (the Deputy), who was assigned to the school as a student resource officer. Antonio admitted that he had brought alcohol to school, where he consumed it. At Ms. Sarna's request, the Deputy administered a breath alcohol test to Antonio, which was positive for alcohol. After administering the test to Antonio, the Deputy advised Antonio of his right to remain silent, and Antonio declined to answer the Deputy's questions about his possession of alcohol.

{2}     Antonio was charged with the delinquent act of possession of alcohol by a minor. He filed a motion to suppress the statements he made to Ms. Sarna because his statements were elicited without a knowing, intelligent, and voluntary waiver of his right to remain silent, citing NMSA 1978, Section 32A-2-14(D) (2009). The district court denied his motion, which was affirmed by the Court of Appeals. *State v. Antonio T.*, 2013-NMCA-035, ¶ 26, 298 P.3d 484. We reverse both the district court

and the Court of Appeals. Although a school official may insist that a child answer questions for purposes of school disciplinary proceedings, any statements elicited by the official may not be used against the child in a delinquency proceeding unless the child made a knowing, intelligent, and voluntary waiver of his or her right to remain silent. Section 32A-2-14(D). Because the State failed to prove that Antonio effectively waived this right, his statements were inadmissible in the delinquency proceeding.

## I.    BACKGROUND

{3}    In April 2010, two teachers at Kirtland Central High School (KCHS) escorted Antonio to Ms. Sarna's office because they suspected he was under the influence of alcohol. Ms. Sarna concluded that Antonio's speech was slurred. She called the student resource officer on duty, Deputy Sheriff Charley, to administer a portable breath test to Antonio. The Deputy is a certified law enforcement officer with the San Juan County Sheriff's Office who spent over eleven years on the police force before being assigned to KCHS as a student resource officer. The Deputy wears a full uniform, including his badge and duty belt with a holstered gun, to work in the school. He was wearing his uniform and his sidearm when he entered Ms. Sarna's office.

{4} The Deputy stood about five feet away from Antonio, preparing the breath test, while Ms. Sarna questioned Antonio about drinking alcohol at school. She asked Antonio if he had been drinking, what he had to drink, how much he had consumed, and if anyone else was drinking with him. Ms. Sarna testified that she typically told students that they would receive a lesser term of suspension if they told her the truth. These kinds of questions and bargains were routine for Ms. Sarna because her job is to enforce discipline at KCHS, where she often deals with student disciplinary cases "just one right after another." In response to Ms. Sarna's questions, Antonio admitted that he had consumed two shots of alcohol, he had brought the alcohol to school in a soda or Gatorade bottle, and he had disposed of the bottle in a trash can east of the bathroom near the school library. He denied that anyone else was involved.

{5} The Deputy listened attentively to Ms. Sarna's questions and Antonio's responses, as he always did, "in case something does come up . . . further on in the investigation that [he] might have to look back onto." The Deputy advised Antonio that he would have to blow into the breath test machine, to which Antonio agreed. Prior to administering the breath test, the Deputy usually would have asked Antonio the same questions that Ms. Sarna had asked, but he saw no need to because she had already asked the questions and the Deputy had listened to Antonio's answers.

Antonio's breath tested positive for alcohol. No parent or guardian was present, and the Deputy did not read Antonio his *Miranda* rights when he administered the breath test because at that time the Deputy "was going by what the school was requesting." While the Deputy was administering the breath test, Ms. Sarna searched Antonio's backpack and located a folding pocketknife.[1]

{6}     Ms. Sarna then asked the Deputy to search for the plastic bottle that Antonio claimed he threw away. The Deputy searched three trash cans in the vicinity of the bathroom near the library, but he could not find the bottle. After the search for evidence turned up nothing, the Deputy returned to Ms. Sarna's office and read Antonio his *Miranda* rights. Antonio answered the Deputy's questions about the knife, but he refused to answer the Deputy's questions regarding alcohol consumption. The statements Antonio made during Ms. Sarna's questioning were documented in the Deputy's police report under the "investigation" heading. The Deputy confiscated the pocketknife that Ms. Sarna found in Antonio's backpack. The

---

[1]Ms. Sarna and the Deputy were the only two witnesses to testify in this case. Their stories differed as to when the knife was discovered and whether or not the Deputy was present when Antonio was questioned by Ms. Sarna. Ms. Sarna testified that she could not be sure of the sequence of events, and the Deputy's testimony and his police report reflect that he was present during Ms. Sarna's questioning and her search of Antonio's backpack. The district court found that the Deputy was present. "[W]hen there is a conflict in the testimony, we defer to the trier of fact." *See Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33.

State later charged Antonio only with possession of alcoholic beverages by minors.

{7} Antonio filed a motion to suppress his statement or confession pursuant to Section 32A-2-14(C) through (E), stating as grounds that "the State cannot prove that the statement or confession offered in evidence was elicited after a knowing, intelligent and voluntary waiver of the Child's rights and must be suppressed." Antonio specifically cited Section 32A-2-14(D), which "requires that the state 'shall prove the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained.' " Antonio requested the district court find that he "did not knowingly, intelligently and voluntarily waive constitutional and statutory rights and suppress any statements or confession."

{8} The district court held an evidentiary hearing on Antonio's motion to suppress on September 1, 2010. After hearing testimony from Ms. Sarna and the Deputy, the district court denied the motion. Antonio entered into a conditional plea and disposition agreement, reserving his right to appeal the denial of his motion to suppress. He appealed to the Court of Appeals, which affirmed the district court's ruling. *Antonio T.*, 2013-NMCA-035, ¶ 26.

{9} The Court of Appeals analyzed the suppression as a constitutional issue, and

discussed the constitutional rights of children during custodial interrogation, *id.* ¶¶ 8-10, *see also State v. Javier M.*, 2001-NMSC-030, ¶ 18, 131 N.M. 1, 33 P.3d 1, and investigatory detentions, *id.* ¶¶ 12-16. It concluded that Antonio had been subject to an investigatory detention, not custodial interrogation. *Id.* ¶¶ 11, 17. The Court noted that "Section 32A-2-14 has thus far only been applied in cases where law enforcement has interrogated or detained a child, never in instances of school discipline involving only a school administrator," *Antonio T.*, 2013-NMCA-035, ¶ 18, and that "Section 32A-2-14 applies to investigations by or on behalf of law enforcement officials," *Antonio T.*, 2013-NMCA-035, ¶ 20. The Court of Appeals then determined that Ms. Sarna was acting within the scope of her duties as a school administrator and was not acting as an agent for law enforcement, and therefore she was not obligated to issue *Miranda* warnings to Antonio. *Id.* ¶¶ 24, 26. The Court of Appeals did not address Antonio's statutory claim that his statement was inadmissible under the plain language of Section 32A-2-14(D), which was the original ground for Antonio's motion to suppress. Both Antonio and the State appealed to this Court.

{10}     We granted certiorari on two questions raised in Antonio's appeal: (1) did the Court of Appeals err in affirming the district court's denial of Antonio's suppression motion; and (2) was the plea invalid because there was insufficient evidence? *State*

6

*v. Antonio T.*, 2013-NMCERT-003 (No. 33,997, Mar. 1, 2013). We granted certiorari on one question raised in the State's appeal: did the Court of Appeals err in holding that Antonio was in investigatory detention? *State v. Antonio T.*, 2013-NMCERT-003 (No. 33,999, Mar. 1, 2013). We hold that Antonio's statements to Ms. Sarna must be suppressed, and therefore he is entitled to withdraw his plea.

## II.   STANDARD OF REVIEW

{11}   Our review of the admissibility of Antonio's statements is de novo because interpretation of the Children's Code is a question of law that is reviewed de novo. *See State v. Jade G.*, 2007-NMSC-010, ¶ 15, 141 N.M. 284, 154 P.3d 659 ("Because this case involves the interpretation of Section 32A-2-14(F), this Court's review of the decision to suppress Child's statements is de novo."); *Javier M.*, 2001-NMSC-030, ¶ 17 (constitutional question relating to custodial interrogation is reviewed de novo).

## III.   DISCUSSION

**A.   Antonio's statements were inadmissible unless the State proved that he knowingly, intelligently, and voluntarily waived his constitutional right to remain silent under Section 32A-2-14(D)**

{12}   Children who commit an act that would be considered a crime if they were over the age of eighteen are subject to the Delinquency Act. NMSA 1978, §§ 32A-2-1 to

7

-33 (1993, as amended through 2009), and are granted certain basic rights under Section 32A-2-14. The basic rights granted to children under Section 32A-2-14 provide them with greater procedural protections than are constitutionally mandated for adults. *See Javier M.*, 2001-NMSC-030, ¶ 32 (stating that the legislative intent behind Section 32A-2-14 was "to provide children with greater statutory protection than constitutionally mandated"). The rationale for this legislative policy is that:

> Children of tender years lack the maturity to understand constitutional rights and the force of will to assert those constitutional rights. Children are encouraged to respect and obey adults and should not be expected to assert their constitutional rights even under the most perfunctory questioning by any adult, particularly an adult of authority.

*State v. Jonathan M.*, 1990-NMSC-046, ¶ 8, 109 N.M. 789, 791 P.2d 64.

{13}	The basic constitutional right at issue in this case is the right to remain silent. Because the Legislature understands that children may not understand their right to remain silent or that they are entitled to assert this right, the Legislature has detailed what procedural safeguards must be satisfied before any statement of a child is admitted as evidence in a court proceeding. Under Section 32A-2-14(C), a child who is suspected of having committed a delinquent act cannot be interrogated or questioned unless the child is first advised of his or her constitutional rights and the child knowingly, intelligently, and voluntarily waives his or her rights. When Section

8

32A-2-14(C) has been violated, the legislative remedy is to preclude the admission of any statement or confession elicited from the child in court proceedings. Section 32A-2-14(D); *Javier M.*, 2001-NMSC-030, ¶¶ 1, 27.

{14} Thus, before a child's statement or confession may be introduced into evidence, the court must consider (1) the age of the child, (2) whether the child's statement was elicited, (3) whether the child was advised of his or her constitutional rights before the statement was elicited, and (4) whether the child made a knowing, intelligent, and voluntary waiver of those constitutional rights, using the listed criteria in Section 32A-2-14(E). The State has the burden of proof on each of these elements. Section 32A-2-14(D).

{15} If the child is less than thirteen years old, under no circumstances may his or her statement be introduced against the child in court proceedings. Section 32A-2-14(F) provides that "[n]otwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition." In *Jade G.*, we held that Section 32A-2-14(F) erects an absolute bar to the admission of any statement made by a child under the age of thirteen—even statements that the child spontaneously volunteers to family members, friends, or others who are not in a position of authority. *See* 2007-

9

NMSC-010, ¶ 16. For children who are thirteen or fourteen years old, the Legislature has created a rebuttable presumption that their confessions, statements, or admissions are inadmissible in court proceedings if such statements were made to a person in a position of authority. Section 32A-2-14(F). The legislation is silent with respect to whether such statements must have been elicited by the person in a position of authority.

{16} If the child is fifteen years old or older, his or her statement is admissible if it was made spontaneously by the child without prompting—i.e., if it was not elicited. Section 32A-2-14(D), (F). If the statement was elicited, the question is whether the State must prove that the child was advised of his or her constitutional rights and knowingly, intelligently, and voluntarily waived these rights, regardless of who elicited the statement. Unlike the Court of Appeals, we answer this question affirmatively.

{17} The Court of Appeals interpreted Section 32A-2-14(D) to preclude only statements or confessions elicited by law enforcement officers or their agents. *Antonio T.*, 2013-NMCA-035, ¶ 20 (holding that all of the basic rights of children enumerated in Section 32A-2-14 only apply "to investigations by or on behalf of law enforcement officials"). We disagree with the Court of Appeals analysis on this point.

10

The Court of Appeals relied upon this Court's opinion in *Javier M.* to conclude that "Section 32A-2-14 applies when a child is formally charged or seized pursuant to an investigatory detention and is not free to leave." *Antonio T.*, 2013-NMCA-035, ¶ 14 (citing *Javier M.*, 2001-NMSC-030, ¶ 38). We recognize that the breadth with which we discussed Section 32A-2-14 in *Javier M.* invited an expansive reading of our holding in that case. While *Javier M.* did refer to Section 32A-2-14—the entire basic rights of children statute—throughout the opinion, *see generally* 2001-NMSC-030, we take this opportunity to clarify our holding in that case.

{18}     In *Javier M.*, police questioned a fifteen-year-old child in the stairwell of an apartment about his consumption of alcohol without first warning the child of his right to remain silent and without informing him that anything he said could be used against him in court proceedings. *See id.* ¶¶ 3-5. This Court was "asked to evaluate the admissibility of the Child's statements made in response to police questioning." *Id.* ¶ 11. We were not asked to determine whether the statute applied to persons other than law enforcement officers. The issue in *Javier M.* was confined to whether law enforcement officers are obliged to warn and obtain a waiver before interrogating a child under Section 32A-2-14(C). *Javier M.*, 2001-NMSC-030, ¶¶ 1, 11. We held that an officer who has a reasonable suspicion that a child was engaged in wrongdoing,

11

and detains or seizes that child, cannot interrogate the child unless the officer advises the child of his or her right to remain silent and that anything the child says can be used against him or her. *Id.* ¶ 48. Absent such warning, the child's statements must be suppressed under Section 32A-2-14(D), as was done in *Javier M.*, 2001-NMSC-030, paragraph 48. In contrast to Section 32A-2-14(C), which was specifically at issue in *Javier M.*, *see generally* 2001-NMSC-030, Section 32A-2-14(D) does not deal with the rights of children in the context of police encounters before the accused child is brought to court. Instead, Section 32A-2-14(D) provides direction to judges and litigants in court proceedings, setting a purely evidentiary standard regarding what statements of a child are admissible as evidence in court.

{19} Because "[i]t is well established that cases are not authority for propositions not considered," *State v. Erickson K.*, 2002-NMCA-058, ¶ 20, 132 N.M. 258, 46 P.3d 1258 (internal quotation marks and citation omitted), *Javier M.* does not establish precedent for interpreting Section 32A-2-14(D), which it did not consider and which it mentioned only in dicta. *See* 2001-NMSC-030, ¶ 27 ("[T]aken together, [Sections 32A-2-14](C), (D), and (E) adopt the general rule governing admissibility of a suspect's statements.").

{20} Moreover, "[w]e are not permitted to read into a statute language which is not

there, particularly if it makes sense as written." *City of Santa Rosa v. Jaramillo*, 1973-NMSC-119, ¶ 11, 85 N.M. 747, 517 P.2d 69 (internal quotation marks and citation omitted). The text of Section 32A-2-14(D) does not specify that the statement must have been elicited by a particular type of person, and under standard canons of construction, "we do not read language that is not present into a statute." *City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 20, 141 N.M. 686, 160 P.3d 595. In fact, there are no exceptions to the conditions set out in Section 32A-2-14(D).

{21}	In contrast, the Legislature chose to specifically address statements made "to a person in a position of authority" in Section 32A-2-14(F), creating a rebuttable presumption that statements, admissions, or confessions of thirteen- and fourteen-year-old children are not admissible, regardless of whether the statements were elicited or not. However, the Legislature made no such limitation in Section 32A-2-14(D), implying that the language was consciously contemplated by the legislators at the time of drafting, and it was purposefully rejected for Section 32A-2-14(D). "We must presume these omissions were intentional." *Jade G.*, 2007-NMSC-010, ¶ 16 (construing the "position of authority" language in Section 32A-2-14(F) to have no application to the clause regarding children under thirteen because the Legislature

13

included it in the second clause but omitted it from the first); *cf. State ex rel. Barela v. N.M. State Bd. of Educ.*, 1969-NMSC-038, ¶ 8, 80 N.M. 220, 453 P.2d 583 (noting that the plain meaning of the statute is clear because "[i]f the legislature had intended that it cover districts in more than one county, appropriate language was at hand to express such intent"). While the Legislature could have enacted different legislation, the only descriptor it employed regarding the kinds of statements that trigger the protections of Section 32A-2-14(D) was that the statement "was elicited." Despite its ability to narrow the language used in Section 32A-2-14(D), the Legislature wrote broadly, mandating that in delinquency proceedings, "[b]efore any statement or confession may be introduced . . . the state shall prove that the statement . . . was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights." *Id.* "Because the Legislature did not include any exception to this clear exclusionary provision, this Court is not permitted to create such an exception." *Jade G.*, 2007-NMSC-010, ¶ 17. By its plain reading, Section 32A-2-14(D) applies to statements elicited from a child by any person, regardless of that person's status or position. This interpretation furthers the legislative intent "to provide children with greater statutory protection than constitutionally mandated." *Javier M.*, 2001-NMSC-030, ¶ 32; *see also J.D.B. v. North Carolina*, ___ U.S. ___,

14

___, 131 S. Ct. 2394, 2403-4 (2011) (dating differential legal treatment of children back to the time of Blackstone, noting that there is a "settled understanding that the differentiating characteristics of youth are universal," and "history is replete with laws and judicial recognition that children cannot be viewed simply as miniature adults" (internal quotation marks and citation omitted)). Accordingly, "it is completely within the Legislature's authority to provide greater statutory protection than accorded under the federal [or State] Constitution." *Javier M.*, 2001-NMSC-030, ¶ 24. In this case, the fact that the statements were elicited by the assistant principal and not the Deputy is not controlling. Before Antonio's statements could be admitted into evidence, the State had to prove that he knowingly, intelligently, and voluntarily waived his constitutional right to remain silent.

**B.      Antonio's statements were inadmissible because he did not waive his right to remain silent as required by Section 32A-2-14(D)**

{22}      A child who possesses or is served any alcoholic liquor has committed a delinquent act. Section 32A-2-3(A)(2). Antonio was suspected of being intoxicated while at school—a school disciplinary violation that would also qualify him to be a delinquent child. Because the right to silence is an individual right, Antonio had the right to remain silent in the face of the assistant principal's questions because the information about his possession of alcohol could be used in a subsequent

15

delinquency proceeding against him. However, there is a difference between questioning a child for school disciplinary matters and questioning a child because he or she is suspected of criminal wrongdoing. *See In re Julio L.*, 3 P.3d 383, 385 (Ariz. 2000) (en banc) ("[N]ot every violation of public decorum or of school rules gives legal cause for criminal adjudication."). Ms. Sarna was entitled to compel answers from Antonio "involving in-school disciplinary matters." *Doe v. State*, 1975-NMCA-108, ¶ 29, 88 N.M. 347, 540 P.2d 827. Antonio's answers could be used against him in school disciplinary proceedings because the Delinquency Act does not apply to non-criminal proceedings. *See* § 32A-2-3(A) (" 'delinquent act' means an act committed by a child that would be designated as a crime under the law if committed by an adult"). However, Antonio's statements could not be used in court proceedings without the requisite showing under Sections 32A-2-14(D) and (E).

{23}    The State did not establish that Antonio was advised of his right to remain silent. Nor does the State contend that Antonio expressly waived his right to remain silent. In addition, his answers to Ms. Sarna's questions do not support a finding that he knowingly, intelligently, and voluntarily waived his right to remain silent. Accordingly, the Legislature has made it clear that such statements cannot be used as evidence in delinquency proceedings under Section 32A-2-14(D).

{24} We emphasize that our holding today should not be construed to require school administrators to advise a child of his or her right to remain silent in order to use incriminating statements elicited from the child against the child in school disciplinary proceedings. We emphasized in *State v. Nick R.* that "[nothing] in this opinion [is] intended to impair the existing authority of school authorities to promulgate and enforce administrative security measures." 2009-NMSC-050, ¶¶ 44-48, 147 N.M. 182, 218 P.3d 868 (affirming school policies prohibiting pocketknives on campus, but holding that a pocketknife was not a "deadly weapon" for purposes of adjudication in Children's Court (quoting with approval *State v. Doe*, 92 P.3d 521, 525 (Idaho 2004) ("[P]ublic school officials [have] an effective means of disciplining unruly or disruptive pupils in an administrative fashion." (alterations in original) (internal quotation marks and citation omitted)))); *State v. Tywayne H.*, 1997-NMCA-015, ¶ 13, 123 N.M. 42, 933 P.2d 251 ("[T]here is a sharp distinction between the purpose of a search by a school official and a search by a police officer. The nature of a . . . search by a school authority is to maintain order and discipline in the school. The nature of a search by a police officer is to obtain evidence for criminal prosecutions." (internal citation omitted)). Similarly, in this case, a plain language reading of Section 32A-2-14(D) is only a bar to the admissibility of children's

17

confessions in delinquency proceedings; in no way does it prevent children's confessions from being used against them in school disciplinary proceedings.

{25} Antonio moved to suppress the incriminating statements he made to Ms. Sarna based on the plain language mandate of Section 32A-2-14(D) that, in order to be admissible against him in a delinquency proceeding, "the state shall prove that the statement or confession offered in evidence was elicited only after a knowing, intelligent and voluntary waiver of the child's constitutional rights was obtained." Because the language of the statute is clear, it is proper to apply it as written. *Jonathan M.*, 1990-NMSC-046, ¶ 4 ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."). In this case, the district court should have granted Antonio's motion to suppress his statements because Antonio's statements were elicited by Ms. Sarna before he was warned and without Antonio having knowingly, intelligently, and voluntarily waived his constitutional right to remain silent. It is undisputed that Antonio refused to repeat the statements after the Deputy advised him of his right to remain silent. Antonio appeared to have understood that his answers to Ms. Sarna's questions would affect his discipline under school rules, but once the Deputy questioned him, he then faced potential criminal charges. Under Section 32A-

18

2-14(D), because the State could not prove that the statements were made after warnings and a valid waiver, the statements were inadmissible.

{26} This case does not require exploration of when a child is subject to an investigatory detention beyond our discussion of those issues in *Javier M.* The contexts of investigatory detentions contemplated by *Javier M.* were limited to encounters initiated and conducted by police officers. "The statute only protects against a child's statements which are made during an investigatory detention in response to a police officer's questioning . . . that is intended to confirm or dispel the officer's suspicions that the child is or has committed a delinquent act." 2001-NMSC-030, ¶ 40. By its plain language, *Javier M.* did not contemplate interactions between a school pupil and his or her school administrator as falling under the auspices of investigatory detention. Because the statutory bar to the admissibility of children's statements is clear, the question is not one of whether Antonio was subject to an investigatory detention, but rather whether the statements he made in response to Ms. Sarna's questioning were admissible against him in court proceedings. The State failed to meet its burden of proof under Sections 32A-2-14(D) and (E).

**IV.   CONCLUSION**

{27} We hold that Section 32A-2-14(D) precluded the use of Antonio's self-

19

incriminating statements against him in a delinquency proceeding. Accordingly, we reverse both the district court and the Court of Appeals. We remand to the district court, where Antonio shall be permitted to withdraw his plea if he so chooses.

{45}     **IT IS SO ORDERED.**


_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**


_____
**BARBARA J. VIGIL, Chief Justice**


_____
**PETRA JIMENEZ MAES, Senior Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**

20