2007-NMSC-010

154 P.3d 659

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**JADE G., a child, Defendant–Respondent**

**and**

**State of New Mexico, Plaintiff–Respondent,**

v.

**Jade G., a child, Defendant–Petitioner.**

Nos. 29,016, 29,017.

Supreme Court of New Mexico.

Feb. 28, 2007.

---

Gary K. King, Attorney General, Joel Jacobson, Assistant Attorney General, Santa Fe, NM, for Plaintiff.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Defendant.

## OPINION

MAES, Justice.

{1} This is the second time Child has sought review in this Court. *See In re Jade G. (Jade G. I )*, 2001–NMCA–058, 130 N.M. 687, 30 P.3d 376, *cert. quashed,* 132 N.M. 484, 51 P.3d 527; *State v. Jade G. (Jade G. II )*, 2005–NMCA–019, 137 N.M. 128, 108 P.3d 534, *cert. granted,* 2005–NMCERT–002, 137 N.M. 266, 110 P.3d 74. This appeal requires us to clarify the nature of the protections provided to juveniles by two subsections of the Children's Code Basic Rights provision, NMSA 1978, § 32A–2–14 (2003). At Child's delinquency proceeding, the Children's Court suppressed statements made by Child and fingerprints taken of Child, based on the court's interpretation of Children's Code Sections 32A–2–14(F) and 32A–2–14(I). The State appealed to the Court of Appeals, which affirmed the suppression of Child's statements. *Jade G. II*, 2005–NMCA–019, ¶ 19, 137 N.M. 128, 108 P.3d 534. On the issue of Child's fingerprints, the Court remanded to the Children's Court for further factual development and to allow the parties to argue the legal questions raised by the Court of Appeals' Opinion. *Id.* ¶ 34. Both the State and Child sought review in this Court. We consolidated the appeals and address the following issues: (1) whether the Court of Appeals had jurisdiction to hear the State's interlocutory appeal; (2) whether statements made by Child, under the age of thirteen, in a noncustodial setting, are admissible in Child's delinquency proceedings; (3) whether Child's fingerprints, taken pursuant to a warrant issued by a district court judge, are admissible in Child's delinquency proceedings. We hold that the Court of Appeals had jurisdiction to hear the State's interlocutory appeal pursuant to NMSA 1978, § 39–3–3(B)(2) (1972), which governs appeals from orders of a district court suppressing or excluding evidence. We affirm the Court of Appeals' decision to uphold the suppression of Child's statements. With regard to the suppression of Child's fingerprints, we hold that until formal allegations of delinquency in a complaint or petition are filed against a child under thirteen, the protection of Section 32A–2–14(I) against taking fingerprints without a court order does not apply. We therefore reverse the Court of Appeals' remand of the issue of the admissibility of Child's fingerprints, as well as the Children's Court suppression order on this matter, and remand this case to the Children's Court for trial.

## FACTS AND PROCEDURE BELOW

{2} On the morning of June 14, 1999, Child shot her father. Child, who was twelve years old at the time of the shooting, asserted the

shooting was accidental. Police, however, suspected that the shooting was intentional and treated their investigation of the shooting as a murder.

{3} During the course of the police investigation, Child was fingerprinted pursuant to a search warrant issued on the day of the shooting by a district court judge, not assigned to the Children's Court division. This warrant was issued before a delinquency petition was filed against Child. The search warrant sought to obtain the latent fingerprints of all individuals found at Child's residence. The affidavit in support of the search warrant listed the names of the individuals, including Child, and their dates of birth. The search warrant, however, did not explicitly mention that Child was under thirteen, nor did it reference Section 32A–2–14(I), which requires that a court order must be obtained prior to fingerprinting a child under thirteen that is alleged or adjudicated to be a delinquent child. The State intended to introduce Child's fingerprints at her delinquency proceeding to show that her fingerprints matched those found on the weapon.

{4} The State also planned to introduce as evidence several statements made by Child to her friends and relatives, both before and after the shooting. The State claimed that Child's statements demonstrated her culpability by showing inconsistencies between Child's version of the events and the physical evidence collected at the scene.

{5} A delinquency petition was filed in Children's Court on August 19, 1999, charging Child with first-degree murder, second-degree murder, and manslaughter. The petition was amended on September 6, 2002, to include the additional charge of conspiracy to commit first-degree murder. Child was arraigned, and on October 22, 2002, Child filed an amended motion to suppress statements made by Child. In support of her motion to exclude her statements, Child cited to Section 32A–2–14(F) of the Children's Code which states:

Notwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition. There is a rebuttable presumption that any confessions, statements or admissions made by a child thirteen or fourteen years old to a person in a position of authority are inadmissible. § 32A–2–14(F). Child argued that because she was under the age of thirteen when she made the relevant statements, those statements could not be introduced against her. The State responded that Child's statements were admissible because the statements were made in social settings to friends and family rather than to individuals in positions of authority. The Children's Court granted Child's motion to suppress, indicating its belief that Section 32A–2–14(F) prohibits the admission of any statement made by a child under the age of thirteen, regardless of the setting or to whom the statement was made.

{6} On January 13, 2003, Child filed a motion to exclude fingerprint evidence taken of Child. In Child's motion to suppress her fingerprints, Child relied on Section 32–2–14(I) within the Children's Code which states: "A child under the age of thirteen alleged or adjudicated to be a delinquent child shall not be fingerprinted or photographed for identification purposes without obtaining a court order." § 32A–2–14(I). Child argued that she should not have been subjected to fingerprinting because her fingerprints were taken pursuant to a search warrant and a search warrant is distinct from a "court order," as described within Section 32–2–14(I). The Children's Court granted Child's motion to suppress, stating that a "search warrant [is] not an 'order' as contemplated under subsection (I) in that an 'order' requires a motion." *Jade G. II*, 2005-NMCA–019, ¶ 7, 137 N.M. 128, 108 P.3d 534. The Children's Court reasoned that the ex parte procedure necessary for procuring a search warrant was not sufficient to meet the requirements of Section 32–2–14(I). *See id.* The Children's Court then determined that the State had ample opportunity to obtain a court order, but had failed to do so, and it was now too late for the State to request and obtain new fingerprints. *Id.* ¶ 38.

{7} The State appealed the suppression of Child's statements and fingerprints to the Court of Appeals. The Court affirmed the Children's Court's decision to suppress

Child's statements, concluding that the Children's Code "plainly forbids admission of the statements of Child." *Id.* ¶ 18. With regard to Child's fingerprints, the Court began its discussion by stating that a "search warrant ... is a form of a court order," but then asserted that this conclusion did not answer the underlying question of whether the Legislature intended Section 32A–2–14(I) to apply to the facts of this case. *Id.* ¶ 23. Instead of determining whether a 'court order' within the meaning of the statute includes a search warrant authorized by a district court judge, the Court stated that in order to determine whether Child's fingerprints are admissible, it was necessary to first determine the meaning of the phrase "alleged ... to be a delinquent child" found in Section 32A–2–14(I). *Id.* ¶ 24. Rather than resolving this matter, however, the Court remanded the issue to the Children's Court, indicating that the parties should be given the opportunity to present any additional facts or legal arguments relevant to deciphering the meaning of this statutory provision.

{8} Both the State and Child sought review in this Court. On certiorari, the State raises three issues: that the Court of Appeals was in error when it affirmed the suppression of Child's statements, in referring a question of statutory construction to the Children's Court, and in raising issues not presented by the parties on appeal. Child raises two issues: that the Court of Appeals lacked interlocutory jurisdiction to hear the State's appeal, and that the Court of Appeals improperly reversed the Children's Court's decision to exclude Child's fingerprints. The appeals of the State and Child have been consolidated for the purposes of this Opinion.

## DISCUSSION

### Jurisdiction

{9} The State filed its appeal pursuant to N.M. Const. Art. VI § 2; NMSA 1978 § 32A–1–17(A) (1999); and NMSA 1978 § 39–3–3(B)(2) (1972), if this case was characterized as a criminal case; and under NMSA 1978 § 39–3–7 (1966) if the case was characterized as a special proceeding in district court. Section 39–3–7 governs appeals from special statutory proceedings in district court, including interlocutory appeals of orders or decisions that practically dispose of the merits of the action. Child argues that the Court of Appeals lacked jurisdiction to hear the State's appeal challenging the suppression of Child's statements and fingerprints. Child asserts that the State, in its original interlocutory appeal challenging the suppression orders, failed to show that the evidence sought to be admitted was critical or material to its case, or that the challenged suppression orders practically disposed of the merits of the case.

{10} The State contends that it properly invoked, and met the requirements for jurisdiction of the Court of Appeals. The State also argues that this Court's writ of certiorari gives us jurisdiction over the case. The Court of Appeals considered the jurisdiction issue pursuant to Section 39–3–3(B)(2), governing appeals from orders of a district court suppressing or excluding evidence. The Court concluded that its jurisdiction was proper under that statute. *Jade G. II,* 2005–NMCA–019, ¶ 13, 137 N.M. 128, 108 P.3d 534.

{11} Previously our Court of Appeals has held that interlocutory appeals from children's court delinquency proceedings are governed by Section 39–3–4, the statutory provision pertaining to interlocutory appeals from civil cases and special statutory proceedings not practically disposing of the merits of the action, but involving controlling questions of law. *See In re Larry K.,* 1999–NMCA–078, ¶ 13, 127 N.M. 461, 982 P.2d 1060 ("We have held ... that the statute governing interlocutory appeals from civil cases and special statutory proceedings, Section 39–3–4, applies to children's court delinquency proceedings." (citing *In re Doe,* 85 N.M. 691, 692, 516 P.2d 201, 202 (Ct.App. 1973), which characterized children's court proceedings as special statutory proceedings)). We note, however, that under the facts of *In re Larry K* and *In re Doe,* the parties would not have been authorized to rely on Section 39–3–3(B)(2), as neither case involved an appeal from a suppression order. The Court in those cases did not consider the applicability of Section 39–3–3(B)(2) to appeals from delinquency proceedings. Thus, there is no precedent to prevent a party to a

delinquency proceeding from filing an interlocutory appeal under Section 39–3–3(B)(2).

■ {12} The State has the same need for an automatic interlocutory appeal of the suppression of evidence in delinquency proceedings as it does in criminal proceedings because, in many cases, whether or not evidence is suppressed will determine if the State can go forward with its case. Because juvenile delinquency proceedings are sufficiently similar to criminal proceedings, we hold that Section 39–3–3(B)(2) governs in the circumstances of interlocutory appeals of suppression orders from a children's court. *Cf. In re Gault*, 387 U.S. 1, 21–31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (discussing how child will be found to be delinquent and subjected to loss of his liberty for years is comparable in seriousness to felony prosecution); *In re M.A.F.*, 966 S.W.2d 448, 450 (Tex.1998) ("Juvenile cases, while classified as civil proceedings, are quasi-criminal in nature.").

■ {13} In this case, the State met the requirements for filing an appeal under Section 39–3–3(B)(2). Section 39–3–3(B)(2) authorizes the State to appeal a district court's decision or order suppressing or excluding evidence in a criminal case within ten days of that decision or order "if the district attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." § 39–3–3(B)(2); *see also State v. Alvarez*, 113 N.M. 82, 84, 823 P.2d 324, 326 (Ct.App.1991). The State in this case did timely file certification under Section 39–3–3(B)(2). Thus, we hold that the Court of Appeals had jurisdiction to hear the State's appeal pursuant to Section 39–3–3(B)(2).

{14} The determination that Section 39–3–3(B)(2) controls interlocutory appeals of suppression orders in delinquency proceedings does not mean that a children's court proceeding cannot or should not be considered a special statutory proceeding under other circumstances. Our application of Section 39–3–3(B)(2) to appeals of suppression orders in delinquency proceedings does not preclude application of Section 39–3–4 to other appeals from children's court delinquency proceedings.

## Suppression of Child's Statements

■ {15} We must determine whether the statements Child, age twelve, made to friends, neighbors, and family members are admissible in Child's delinquency proceeding under Section 32A–2–14(F). Because this case involves the interpretation of Section 32A–2–14(F), this Court's review of the decision to suppress Child's statements is de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). When interpreting Section 32A–2–14(F), we seek to give effect to the Legislature's intent. *See id.* To ascertain legislative intent, "we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 1996–NMSC–038, 121 N.M. 764, 769, 918 P.2d 350, 355 (1996). We read the entire statute as a whole, considering provisions in relation to one another. *Cobb v. State Canvassing Bd. of N.M.*, 2006–NMSC–034, ¶ 34, 140 N.M. 77, 140 P.3d 498.

■ {16} Section 32A–2–14(F) was enacted by the Legislature in 1993. The previous version of the statute, located at Section 32–1–27(F), was a single sentence: "Notwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of fifteen years prior to an adjudication on the allegations of the petition." NMSA 1978, § 32–1–27(F) (1981). The current version of this provision distinguishes between children under thirteen and children who have reached their thirteenth birthday, affording greater protection to children twelve and under:

> Notwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition. There is a rebuttable presumption that any confessions, statements or admissions made by a child thirteen or fourteen years old to a person in a position of authority are inadmissible.

§ 32A–2–14 (F). The fact that the Legislature drew a distinction between children under thirteen and children aged thirteen and

fourteen demonstrates its clear intent to treat the two groups differently, and the plain language of this statute explains the nature of that difference. First, the second sentence of Section 32A–2–14(F) describes that statements made by a child thirteen or fourteen *may* be admissible if the State overcomes a rebuttable presumption of inadmissibility. No such exception is provided to allow for the admission of statements made by children under thirteen. Second, the phrase "made to a person in a position of authority" qualifies "confessions, statements or admissions" in the second sentence. Likewise, the Legislature did not include this qualification in the first sentence of the amended statute. We must presume these omissions were intentional. *City of Santa Rosa v. Jaramillo,* 85 N.M. 747, 750, 517 P.2d 69, 72 (1973) (" 'We are not permitted to read into a statute language which is not there, particularly if it makes sense as written.' " (quoting *State ex rel. Barela v. N.M. State Bd. of Educ.,* 80 N.M. 220, 222, 453 P.2d 583, 585 (1969))). Thus, the statute provides complete protection to children under thirteen, leaving no avenue for the State to introduce the confessions, statements, or admissions of individuals under thirteen regardless of the context in which, or to whom, they were made.

{17} We further conclude that the phrase "[n]otwithstanding any other provision to the contrary" operates to eliminate any doubt regarding the totality of the ban on admission of confessions, statements, or admissions of children under thirteen. We disagree with the State's assertion that this phrase should be understood to mean simply that the Rules of Evidence do not control the admissibility of children's confessions, statements, and admissions. The phrase "*any* other provision" (emphasis added) is broad enough to include other provisions of the Children's Code, such that even the Delinquency Act's stated purpose of "hold(ing) children committing delinquent acts accountable for their actions" does not provide a means by which the State can get around this prohibition. *See* NMSA 1978, § 32A–2–2(A) (2003). Rather, we share the Court of Appeals' presumption that the Legislature "weighed these considerations with the protective purposes of the Children's Code," and

we share its conclusion that no basis exists to question what the Legislature so comprehensively and unequivocally addressed in this statutory provision. *See Jade G. II,* 2005–NMCA–019, ¶¶ 18–19, 137 N.M. 128, 108 P.3d 534. Because the Legislature did not include any exception to this clear exclusionary provision, this Court is not permitted to create such an exception. *See City of Santa Rosa,* 85 N.M. at 750, 517 P.2d at 72 ("The legislature did not see fit to include it in the statute, therefore it is excluded.").

■ {18} In its briefing to this Court, the State argues that the term "statements" in Section 32A–2–14(F) should be ascribed a technical meaning. The State asserts that the term "statements" refers to "formal narratives of facts," and under this interpretation of Section 32A–2–14(F), the comments Child made in social contexts to relatives and friends would be admissible. We are unpersuaded by the State's argument that "statements" should be interpreted as "formal narratives of facts." This interpretation of "statements" is inconsistent with the second sentence of Section 32A–2–14(F) that describes "statements or admissions made by a child . . . to a person in a position of authority." As we discussed, this qualification on the term "statements" is not present in the first sentence of Section 32A–2–14(F) and we have determined that it was intentionally omitted. In light of this intentional omission, we believe that we cannot ascribe a technical meaning to the term "statement" in the first sentence as we cannot conceive of a situation in which a child under thirteen gives a "formal narrative of facts" to an individual who is not in a position of authority. Therefore, in interpreting Section 32A–2–14 (F), we will not depart from established statutory interpretation which requires that, "[i]n construing a statute, statutory words are presumed to be used in their ordinary and usual sense." *Weiland v. Vigil,* 90 N.M. 148, 151, 560 P.2d 939, 942 (Ct.App.1977) (citing *Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P.2d 967 (1971)).

{19} Ascribing the term 'statement' its ordinary meaning is consistent with the purpose of Section 32A–2–14(F), as stated in *State v. Setser,* 1997–NMSC–004, 122 N.M.

794, 932 P.2d 484 (1966). Excluding all statements of children under thirteen is compatible with the legislative purpose of providing extra protection for the very young. *Id.* ¶ 15. Additionally, this reading of the statute furthers the recognized goal of encouraging free communication between children and adults. *State v. Jonathan M.,* 109 N.M. 789, 791, 791 P.2d 64, 66 (1990) ("Section 32–1–27(F) encourages children to freely converse with adults without fear that their statements will be used against them at a later date.").

{20} In light of the purposes of 32A–2–14(F) and the unambiguous language within the statute, there is "no basis on which [this Court] can determine that the Legislature did not mean what it stated." *Jade G. II,* 2005–NMCA–019 ¶ 18, 137 N.M. 128, 108 P.3d 534. We hold that all of Child's statements are inadmissible in her delinquency proceeding and we affirm the Court of Appeals' decision to suppress Child's statements.

**Suppression of Fingerprints**

{21} The Children's Court suppressed Child's fingerprints based on its interpretation of Section 32A–2–14(I), which states "[a] child under the age of thirteen alleged or adjudicated to be a delinquent child shall not be fingerprinted or photographed for identification purposes without obtaining a court order." The court reasoned that prints taken pursuant to a search warrant were inadmissible because a search warrant is not a "court order." We must interpret Section 32A–2–14(I) in order to determine what procedure is required for the fingerprints of a child under the age of thirteen to be admissible in a delinquency proceeding, and, thus, our review of this section of the Children's Code is de novo. *State v. Wilson,* 2006–NMSC–037, ¶ 6, 140 N.M. 218, 141 P.3d 1272.

{22} At trial and on appeal to the Court of Appeals, the parties' arguments in favor of and against suppression of Child's fingerprints focused on whether or not a search warrant constitutes a "court order." The Court of Appeals, however, did not see this question as determinative in this case. *Jade G. II,* 2005–NMCA–019, ¶ 23, 137 N.M. 128,

108 P.3d 534. Instead, it indicated that in order to determine if Section 32A–2–14(I) applied to the facts of the case at bar, the meaning of the phrase "alleged . . . to be a delinquent child" must be discerned. *Id.* ¶ 24. If Child was not "alleged . . . to be a delinquent child" at the time that she was fingerprinted, then the protections of 32A–2–14(I) would not apply and her fingerprints would be admissible. As noted above, the Court of Appeals did not resolve this question, but remanded the case to the Children's Court to answer this and other related questions. *See id.* ¶ 40.

{23} In its Petition, the State asserts that the Court of Appeals erred in addressing the issue of the meaning of "alleged . . . to be a delinquent child," since neither party raised that issue. Rather, the State contends that the Court of Appeals "should have adhered to tradition" by refraining from expressing an opinion on issues not raised by the parties. However, the State also argues that, having raised this issue sua sponte, the Court of Appeals "obligated itself to resolve" the question rather than remanding it to the Children's Court for resolution.

{24} We acknowledge that as a general rule, "propositions of law not raised in the trial court cannot be considered" sua sponte by the appellate court. *N.M. Dep't. Of Human Servs. v. Tapia,* 97 N.M. 632, 634, 642 P.2d 1091, 1093 (1982) (quoting *Sais v. City Elec. Co.,* 26 N.M. 66, 68, 188 P. 1110, 1111 (1920)); *see also In re Doe,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982); *State v. Ferguson,* 111 N.M. 191, 196, 803 P.2d 676, 681 (Ct.App.1990). However, this Court has held that three exceptions to that rule exist:

"(1) That jurisdictional questions may be raised for the first time here. . . . (2) That questions of a general public nature affecting the interest of the state at large may be determined by the court without having been raised in the trial court. . . . And (3) that the court will determine propositions not raised in the trial court where it is necessary to do so in order to protect the fundamental rights of the party."

*N.M. Dep't. Of Human Services v. Tapia,* 97 N.M. at 634, 642 P.2d at 1093 (quoting *Sais,*

26 N.M. at 69, 188 P. at 1111). The Court of Appeals did not set forth the grounds on which it based its decision to depart from the general rule against raising an issue sua sponte. We find, however, that the interpretation of Section 32A–2–14(I) presents an issue of first impression in New Mexico with the potential to substantially impact investigatory procedure in juvenile cases. Therefore, it was permissible for the Court of Appeals to take up this issue as a question of a general public nature affecting the interest of the state at large under the second exception, above. *Cf. State v. Doe,* 90 N.M. 572, 573–74, 566 P.2d 121, 122–23 (Ct.App.1977) (holding that issue of whether the Children's Court erred in committing mentally ill, delinquent children to the state boys' school and in ordering that psychiatric care be provided them affects the interests of the state at large and is properly before the Court of Appeals despite not having been raised in the Children's Court).

{25} We conclude, however, that the Court of Appeals' decision to remand rather than resolve the issue of the admissibility of Child's fingerprints, with instructions for the Children's Court to engage in statutory interpretation and examine legislative intent, was in error. *See Jade G. II,* 2005–NMCA–019, ¶¶ 34–47, 137 N.M. 128, 108 P.3d 534. Remanding to allow the Children's Court to conduct a statutory analysis seems both unnecessary and inconsistent with the traditional role of the appellate court. *See generally State v. Attaway,* 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994) (discussing the respective functions of trial courts and appellate courts). Additionally, as we discuss below, the Court of Appeals did not raise any questions of fact that would require the Children's Court to make additional factual findings in order to facilitate the interpretation of Section 32A–2–14(I). Thus, we reverse the Court of Appeals' decision to remand this issue to the trial level and proceed to address this issue here.

**Meaning of "alleged ... to be a delinquent child"**

{26} Section 32A–2–14(I) of the Children's Code prohibits the fingerprinting of children under the age of thirteen for identification purposes, alleged or adjudicated to be a delinquent, without a court order. Like the Court of Appeals, we find it necessary to discern the meaning of the phrase "alleged ... to be a delinquent child" in order to determine whether the protection provided in Section 32A–2–14(I) applies to Child.

{27} The Court of Appeals presented several possible meanings of the phrase "alleged ... to be a delinquent child." It suggested the words may mean "allegations of fact in a law enforcement officer's affidavit for a search or arrest warrant, allegations of fact and delinquency in a complaint, allegations of fact and delinquency in a petition, or perhaps even some other allegations of delinquency." *Jade G. II,* 2005–NMCA–019, ¶ 27, 137 N.M. 128, 108 P.3d 534. In its Answer Brief before this Court, the State asserts that guiding principles of statutory construction would lead inevitably "to the conclusion that subsection (I) does not apply to young children who are merely *suspected* of being delinquent. Rather, subsection (I) applies only to those who have been formally *alleged* to be delinquent."

{28} We have previously stated that "alleged" when used in the context of Subsection 32A–2–14(C) of the same statute "is a specific legal term which pertains to the time period *after which a formal petition alleging delinquency has been filed* in the Children's Court." *State v. Javier M.,* 2001–NMSC–030, ¶ 29, 131 N.M. 1, 33 P.3d 1 (emphasis added). Moreover, in the same Opinion we drew a clear distinction between the meaning of the terms "alleged" and "suspected" in the context of the Delinquency Act, finding that the plain meaning of " 'suspected' refers to a period *prior to* the filing of a petition when a child is believed to have committed a crime or offense but has not yet been formally charged." *Id.* (emphasis added.) Although our Opinion in *Javier M.* examined the meaning of "alleged" and "suspected" as used in Section 32A–2–14(C) of the Delinquency Act, we apply that interpretation to Section 32A–2–14(F) as it is considered a "normal rule of statutory construction" to interpret "identical words used in different parts of the same act [as having] the same meaning." *Dep't. of Revenue of Or. v. ACF Indus., Inc.,* 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (internal quotation marks and citation omitted). Fur-

ther, when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional. *City of Santa Rosa,* 85 N.M. at 750, 517 P.2d at 72. Therefore, we hold that Section 32A–2–14(F) is not triggered at the stage when a child is merely suspected of being delinquent and only applies after a formal petition alleging delinquency has been filed.

{29} We now apply the definition of "alleged" developed in *Javier M.,* "the time period *after which a formal petition alleging delinquency has been filed* in the Children's Court," 2001–NMSC–030, ¶ 29, 131 N.M. 1, 33 P.3d 1 (emphasis added), to the facts of this case. Child's fingerprints, were obtained pursuant to a search warrant that was executed on the same day the homicide occurred (June 14, 1999). However, the formal petition alleging Child's delinquency was not filed until August 9, 1999. Because a formal petition had not yet been filed when Child's fingerprints were taken, we hold that the protections of 32A–2–14(I) did not apply and that provision cannot be used as a basis to exclude her fingerprints from evidence. Because we conclude that Section 32A–1–14(I) does not apply to the facts of this case, we are not required to analyze whether a search warrant constitutes a "court order" as defined by Section 32A–2–14(I). Thus, we do not address this issue.

## CONCLUSION

{30} We affirm the Court of Appeals' decision to uphold the suppression of Child's statements and reverse its remand of the issue of the admissibility of Child's fingerprints, as well as the Children's Court suppression order on this matter. This case is remanded to the district court for further proceedings consistent with this Opinion.

{31} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, RICHARD C. BOSSON, Justices.